oral argument not to exceed 15 minutes per side. Ms. Erick, you may proceed for the appellant. Good afternoon, your honors. May it please the court, thank you for hearing argument on this case today. My name is Elizabeth Erick and I'm here to represent the appellant Tyler Williams. On behalf of Mr. Williams, I'd like to reserve three minutes for rebuttal. In 2004, at the age of 16 years old, Mr. Williams committed four robbery offenses. All four offenses were charged within the same indictment and he was ultimately convicted of those offenses. One of those offenses was for a first degree robbery conviction under the Kentucky Revised Code. The other three offenses were for second degree robbery under the Kentucky Revised Code. For purposes of this argument today, I'm not arguing that the first degree robbery conviction does not count as a predicate offense under the Armed Career Criminal Act. I'm only speaking today towards the three second degree robbery offenses. Subsequently, in 2021, Mr. Williams was convicted in federal court of violations under 841 and 922G. At a sentencing hearing, the district court determined that Mr. Williams was an armed career criminal based on those four prior convictions. Mr. Williams raised three different challenges to his convictions for second degree robbery. The first, under the Elements Clause or the Use of Force Clause of the Armed Career Criminal Act. The second, under the Borden decision relating to whether or not the second degree robbery requires the appropriate mens rea to be a predicate offense. And finally, with respect to whether or not those offenses that were charged in the same indictment were committed on occasions different from one another. I'd like to address each one of these in turn briefly. Under the Elements Clause, the court should find that second degree robbery under Kentucky law does not qualify as having the requisite force required for violent force. We know from Johnson and Stoeckling in the United States Supreme Court cases that the physical force element of the Armed Career Criminal Act requires... Isn't the question whether mere snatching is enough to get a conviction under the second degree robbery in Kentucky? Yes. If I come up and snatch something out of your hand. So Stoeckling implies that that's not enough, right? Yes. Citing Robinson in Florida. The Kentucky case law seems a little sparse on that. But I can't... Is it... What's the 90... Is it Boger? Is that the 90... 2005 case? I mean, that one suggests to me that mere snatching is not enough. But tell me what your understanding is. So I agree with you to the point that mere snatching is not enough, persuading Stoeckling. And I can't remember when Boger was decided, but I do think that Boger lends itself to the fact that mere snatching is enough. And the reason that I believe that is because if you look at Boger, not necessarily the specific facts that occurred in Boger, but if you look at the way that the court analyzes the issue of what is required, what is the required level of force in Kentucky, what the court does is it refers back to these pre-statute cases that were decided under the common law. And it refers to them favorably. And those cases are Davis, Stockton, and Jones. Those are cited in my brief. And each of those cases essentially states that mere snatching is enough, snatching without any resistance from the victim. So you see the court in Boger sanctioning those prior decisions that mere snatching is enough. The other thing that I'll point the court to in relation to that is the fact that when the United States Supreme Court was analyzing the Florida statutes, in Stokeling, one of the points that the court made was that Florida had a separate sudden snatching statute. Kentucky does not have such a statute. Let me ask you a question, though, because the one case Boger cites is this Commonwealth v. Davis, right? Yes. On the facts of Davis, this is the woman who had her purse, it says, wrenched out of her hand or whatever. She resisted with all her force, but he slipped one of his hands over her wrist, wrenched her pocketbook out of her. That's not a mere snatching, right, on the facts? I mean, I understand it took place in 1902 or whatever, but that wouldn't be a mere snatching. I mean, that's the one case that Boger seems to cite. Now, there's the language about how it's not so much the extent and degree of violence which makes the crime as the success thereof. I mean, that helps you, I assume, because it's saying we don't care about the force, it's just whether you were successful. I'll ask your friend on the other side to explain that. But on the facts of it, I'm just going with the facts of Boger, the facts of Davis. There doesn't seem to be a mere snatching, and that's the one case that Boger seems to rely on. So I don't know whether it's – how do we know that mere snatching is still enough in Kentucky? So the Davis case, I think what the court looks at is that it will be observed that the snatching of money from Parton's hand is – there was a snatching of money from the hand in Davis, and that was excluded from the jury. But what the Davis court said was that that should have gone to the jury because that alone was enough evidence of violence. But you're absolutely correct on the facts of Boger that there was a wrenching there. I mean, the other thing that I find interesting is in footnote 7 of Boger, the court cites People v. Davis Colorado Appellate Court case and says, quote, to remove an article of value attached to the owner's person or clothing by a sudden snatching by self is not robbery unless the article in question is so attached to the person or his clothes to require some force to affect its removal. I mean, a favorable cite to that case, which is what it looks like, suggests that the court is saying mere snatching is not enough in Kentucky. I mean, I'm reading a lot into it. I understand that. But, I mean, that's all – we're just taking the evidence, what we've got. Yes. And unfortunately, I think we do have to read a lot. Is this something we could certify to the Kentucky Supreme Court? I believe it is, Your Honor. Has anybody asked for that? Not to my knowledge. And I can say that I have not asked for that. Is that done in criminal cases? My understanding is it is done in criminal cases. And I can't think of a case off the top of my head, but I'm pretty sure I've seen a prior one. But it would be asking the Kentucky Supreme Court to resolve an issue under a federal statute. And that wouldn't be typical, would it? I think it would be asking the Kentucky court to resolve the question of whether or not snatching without resistance would qualify as robbery under the Kentucky statutory scheme. Okay. The other thing that I would point to is in Stoeckling, the court discussed the sudden snatching statute that Florida had separate from their robbery statutes. And that seemed to be an important point. I will note that Kentucky does not have that statute. You have either committed a robbery in Kentucky, some degree of robbery, or you've committed theft by unlawful taking. Kentucky defines robbery as an offense against a person, whereas the definition of theft is theft against or an offense against property. And one key point... What did the sudden snatching statutes do? Did they elevate? They would fill a gap? In other words, would it be treated like a robbery in those states that have that statute? Yes, I believe it gives some in-between. It becomes more than a theft, but not a robbery? Yes, and I think that's based on the level of force that's used or the victim's resistance. So one case for the court to review in considering this is the Hatton case, which is a Kentucky Supreme Court case, where the court indicated that a defendant would only be entitled to a lesser included offense instruction or a theft instruction in a robbery case if the jury could reasonably conclude that the defendant committed the crime without any force whatsoever. And then it went on to provide the example that the crime would have had to be committed without the victim's awareness. And so my argument to this court today is that that is certainly more encompassing than what the force element is allowed under Stoeckling. The other thing that I'll note is when you're reviewing Kentucky cases, a lot of times the Kentucky courts, and Boger is one of the cases that does this, the courts talk about a victim's will rather than just a victim's resistance. And I would note that those two words have different meanings. Resistance seems to require, to me, some sort of volitional act, whereas if you take something against somebody's will, that can simply mean that you've taken it against their internal desire. If there are no more questions with respect to the use of force, I'll move on to the mens rea argument. The issue is whether or not under Borden, the second-degree robbery statute in Kentucky has the relevant mens rea requirement. Borden told us that recklessness will not suffice to operate as a predicate offense under the Armed Career Criminal Act. Borden talks about that the offense committed has to be committed with purpose and knowing and a deliberate choice of wreaking harm on another rather than a mere indifference of risk has to take place. Case law in Kentucky indicates that while the theft element of a second-degree robbery requires specific intent, the physical force element does not. Courts have explained that without the specific intent of the theft element of robbery, the remaining element, the physical force element, can be accomplished with the lesser intent. Courts have specifically pointed to the crime of assault and wanton endangerment as being encompassed by the physical force element in second-degree robbery cases, for example, in Slavin and Bennett. Kentucky's definition of wantonness and Borden's definition of recklessness are not distinguishable. I guess I've used my time, so I apologize. You have your rebuttal time, Ms. Erick. Okay, thank you. Mr. Grant. Please, the Court. John Grant for the United States. I think what we really need to focus on here is this is a question of statutory interpretation. And we have the Kentucky statute, which is nearly identical to the elements clause, because the Kentucky statute for second-degree robbery says when in the course of committing theft, the defendant uses or threatens immediate use of physical force upon another person with intent to commit the theft. Are you saying that under the case law we can't look at, are you saying that under the federal case law we cannot look to Kentucky law to see how the cases define either threat or force or, I mean, we can, right? Yes, yes, certainly we can. The problem is, as the appellant recognizes it, there's a dearth of authority out there. So most of the cases are from 1902, 1904 under the common law and not under the modern statute, which was adopted in 1975. But cases decided after the statute was adopted have said that they still look to the law before the statute. In some ways. And so the only case that I know of is the Boger case. Right. And in that case, which was more than purse snatching, is when the lady was, you know, the guy came and grabbed her purse and she fought back with resistance. But they cited Davis with approval. Yes, but the point was about physical force. And the court there said any force, the question was, was the force sufficient? Because the Kentucky statute defines physical force as force upon or directed toward the body of another person. So the argument there was, I was grabbing the person's, I was grabbing her purse. I wasn't using force on her person. That was the connection. If something is connected to the body and you're pulling at it, then you are actually using force against the person's body. And so the footnote and all that is directed toward the definition of physical force. And the court there said, the Kentucky Court of Appeals, in an unpublished decision, said any force sufficient to take property against the owner's will is sufficient force. And then in Stokely, the court said that. But will is not the same. Your friend on the other side I think is right. Will is not necessarily the same thing as resistance, is it? I think that's splitting hairs. I think that, because actually in Stokely, Justice Thomas, who authored the opinion, I think at one point does use the word will in the opinion itself. Well, isn't it always taken against the person's will? I mean, if you're stealing something. No, no. Because, like, say you're at the grocery store and I'm behind you and I reach in and pull something out of your purse. Or I pull something out of your, secretly pull something out of your pocket without you being aware of it. And I haven't committed robbery, because robbery is theft plus assault. It's the two things together. That's what makes it particularly dangerous. Right. But I was focusing on the word will as opposed to resistance. No. I mean, if I have a bag and you come in and you're behind me and you take something out of my bag, how could it be said that it's taken against my will? Well, I think it is. We don't know what the will is, right? It is. Maybe you're unaware that it's taken. It's completely unaware. But you're saying the exercise of the victim's will. Right. I mean, but the important thing here is the statute itself says it has to be forced, used upon, or directed toward the body of another person. So I don't really, I think, you know, yes, the court in Boger was reaching back and looking at things to talk about what fiscal force is. But then to say that the unpublished Intermediate Kentucky Court of Appeals is somehow redefining the statute by borrowing language from prior courts to talk about the level of fiscal force. For instance, the case where the money was taken from the person's hand and then you refused to give it back. Right. Are you saying that that would not be robbery or would you construe that? No, I can see that's not robbery, yes, because there's no resistance. It's not, you know, because if robbery means I'm telling the person either I'm coming up and I'm beating them somehow to get something from them or I'm threatening them with force, either a gun or something. The money in the hand, that was Davis, right? I'm not sure which case that was exactly. So if I'm reaching up and, like, I'm getting ready to pay a clerk and someone comes up behind me and snatches the money out of my hand, I'm not aware they've done it until they've actually done it. I'm not giving them the money as a result of them either threatening force or using force against me, and that's what robbery entails. Well, does it have to be, you're saying it's given over? I mean, it would be robbery even if somebody grabbed a chain off your neck. Is that robbery? It depends on more of the facts, I think, really. You know, it depends on whether it is taken against their will or with resistance. So if they, you know, so that's some of the fine line that the court, the Kentucky courts have talked about, like where to draw that line and what is actually physical force. So I'm not exactly sure, but, you know, in this case, you know, the point is it requires a physical force against the body, but it would have to be, they would have to use or threaten the use of the force to actually for the robbery to occur. But, I mean, Stokely basically, but it's interesting here that the second degree robbery, I mean, it's almost identical to the elements clause. I mean, it's almost word for word. So this court would have to say that the elements clause did not encompass the Kentucky statute when it's almost the exact same language, because in Stokely what was different was... the statute the way one might think that they would, that when you really look at the case law as opposed to the statute, you see that it doesn't satisfy the element. I think that would be fine if we had definitive interpretation from the Kentucky courts, which we don't here. So, but we do have clear statutory language. Now, in terms of intent, the Kentucky Supreme Court in the Slavin case said that there is no offense of wanton robbery. And in Kentucky, wantonness means recklessness. So there is no reckless offense of robbery. And, you know, the person has to act with intent, and use or threaten the use of physical force with intent to commit the theft. So I don't really... In Borden, the court said that reckless crimes don't qualify as violent felonies because they do not involve active use of force against another person. And that's exactly what we have here. Now, the third issue that the defendant didn't get to is the matter of dealing with supplemental briefing, the Wooden case that just came out of the Supreme Court, which is on the requirement of different occasions. And frankly, this is... I don't really think after Wooden there's any dispute. Certainly, Wooden overruled this court's precedent because this court had said, as long as it's different moments in time, then they are different occasions. And the Supreme Court said, no, that's too narrow. But the court did say that you should consider multiple factors, timing, proximity of location, character and relationship of offenses. But in Wooden, the court said sometimes a single factor, especially time or places, is determinative. And then they talked about how if offenses are separated by substantial gaps in time, then they would be occurring on different occasions. And they cited with approval lower court decisions, which as long as they're separated by more than one day, they are committed on different occasions. And here his burglary crimes took place on January 15th, 23rd, and 29th, March 13th of 2004. So I don't really think there's any debate left. Certainly, the way this court was analyzing closed cases wouldn't be permissible anymore because in Wooden, it was a burglary of a storage unit facility. They broke into one, the defendant broke into one unit and then kept breaking into other units and then was charged with ten different burglaries. And the court said that's really one occasion. It's not even though there were ten different charges. Do you think, per se, if crimes are committed on different days, that would be it? Yes. Yes, that's it. And also, even if they're committed on the same day— Did the court really give us that? I mean, it said timing was a key, but I don't know that it seemed like it was moving away from a bright line rule like that. Let's see. Hold on. Okay. I mean, Justice Kagan says timing, of course, is important or something like that. Okay, so what the court said is, in many cases, a single factor, especially time or place, can decisively differentiate occasions. Courts, for instance, have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart or at a significant distance. So I think that's fairly— So let's say someone robbed a liquor store and then immediately went across town and robbed another store the same day. That could still count because the distance with the locations. The question would be, you know, if you're in one store and you commit one crime and then commit another similar crime in the same store, those kind of things. So the court said most of the time it is a straightforward, intuitive application, but there will be some close questions. And that will be up to the lower court's side. This case, I don't think, falls into that category. There are a couple other issues that were brought up in briefing that I don't think were fully developed. And I argued in my footnote to my principal brief that the issues were waived, but I just do want to flush those out just a little bit. One was about whether it's necessary to have a jury finding on different occasions. And I didn't cite this in my brief, but just as a matter of law, this court decided in 2004 in the United States v. Bergen case, which is 388, Feb. 3, 177, that whether crimes occurred on different occasions falls within the exception, the apprendee exception for a prior conviction. So jury determination is not required. That's been decided by this court. I think the defendant also argued at one point that the different occasions requirement is vague. This court decided in the United States v. Jenkins, 770, Feb. 3, 507, 2014, that it shot that argument down. And then the other argument, which was actually the subject of Justice Gorsuch's concurrence in the Wooden case, which concerns the rule of lenity. And this court recently, it was just this past May in the United States v. Miller, it was case number 215598, the court said that that rule only applies when the statute is so ambiguous that the court is simply left to guess what Congress intended. And Wooden clearly gives us a roadmap to decide what different occasions are, and so the court doesn't have to guess. So that doctrine would not apply. Does that rule ever apply when we're considering a state statute, as whether it's a violent felony or meat-seeking? Well, that's what Justice Gorsuch was trying to say, that he thought that the government should lose under that rule. Obviously, the majority of the court didn't follow that, but he thought that the rule of lenity, that's what should be the guidepost for these kind of cases. But, of course, that's not what the court followed. So, if there are no further questions, the United States requests that the sentence be affirmed. Thank you. Oh, wait, let me ask you. Yes, sir. Certification. Have you ever heard of certification in like an ACCA situation, where we would say is mere snatching of? I guess it could be done, but following up on what Judge Gibbons said, I think it would be really strange, because really the basic issue is, is this the violent felony under 924E, and then this court then has to determine? But it totally turns on what the Kentucky statute means, right? I mean, we're just construing Kentucky law. Isn't that the kind of situation where sometimes we say, what does your law mean? I think it could be permissible. I don't think it's necessary in this case. I think the court has the power to do it. We do this all the time in multiple contexts. You know, so part and parcel of what federal courts do under our current sentencing regime. Correct. There are many issues where the court is trying to figure out how the state courts would grapple with an issue, and that it's necessary then to make a federal determination on a criminal statute, for example. And so I would presume that it would be with somewhat reluctance that the court would certify question to a state court. Although here you do have conflicting, you do have a situation where it's unclear. Most of the time you know, you can figure it out, the question of state law, how does it interpret the elements here. So it's a little unclear. I agree with you. This case is not like a slam dunk for me where obviously we win, there's no question. But I do think that would be 100%. I feel like it's more like an 80% case, in my opinion, that we should win. Thank you. Thank you. Just going back to the mens rea issue, I just want to point out that there are two different elements to second-degree robbery in Kentucky, and only one of them is specifically denoted as having specific intent. And the case law is supportive of this, and I'll specifically point the court to a threatened use of force case, the Tunstall case, wherein two second-degree robbery counts were upheld by the Supreme Court because the defendant wore a mask when he went in and committed a robbery. However, at no point was there any testimony, apparently, that he made any threats or aggressive movements or anything like that. And so when you're looking at that intent, it shows that the intent was just as likely to disguise himself rather than to threaten force. So Kentucky courts really treat the intent of the use of force element as irrelevant. With respect to the use of force argument, I would say, yes, the case law is unclear in Kentucky, and I think we've all agreed to that today. And I would say that if the case law is unclear, then the decision should go towards Mr. Williams rather than holding him to an additional 15-year mandatory minimum. The defendant should get the benefit of the doubt in those types of cases. I will also note that I could find no theft by unlawful taking case wherein it would have constituted something along the lines of the sudden snatching statute that you would see in Florida. So I absolutely think that these cases are falling under second-degree robbery in Kentucky rather than the theft offenses. But you don't have anything, you have no recent cases where there's a conviction without some sort of force? I don't have any recent cases where the court has, in that case, the facts of that case found that it wasn't a second-degree robbery without the victim's resistance. However, when you look at the analysis that the courts do in those cases, it still points to the indication that resistance is not necessary to be convicted of second-degree robbery because it is a crime against a person. If you take something from a person, it's a robbery. If you take property unlawfully, it's a theft offense in Kentucky. Well, you don't have an offense larceny from a person? I'm sorry, I didn't understand you. Do you have an offense, like in Michigan there's larceny from a person? Is there such an offense? There is no offense to my knowledge in Kentucky, and I did look into that. It's simply theft, a generic larceny, or robbery? Yes. We appreciate very much the arguments both of you have made. Ms. Erick, we know in your case, in particular, you're appointed under the Criminal Justice Act, and we are very, very appreciative of your undertaking the representation of Mr. Williams through zealous advocacy on his behalf today. Thank you. Thank you. That's very kind. All right.